STEVEN T. GUBNER - Bar No. 156593
RICHARD D. BURSTEIN - Bar No. 56661
JORGE A. GAITAN – Bar No. 288427
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:       sgubner@bg.law
                rburstein@bg.law

Attorneys for David Seror, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:18-bk-11620-VK |
| ANTOINE R. CHAMOUN, aka TONY CHAMOUN aka D&J FLOORING AND DESIGN aka T & J FLOORING AND DESIGN, INC., | Adv. Case No. 1:19-ap-        -VK |
| | Chapter 7 |
| Debtor. | **COMPLAINT TO AVOID FRAUDULENT TRANSFERS** |
| DAVID SEROR, Chapter 7 Trustee, | Date:   [To be set by Summons] |
| Plaintiff, | |
| v. | |
| WALID R. CHAMOUN, an individual, PATRICIA CHAMOUN, an individual, | |
| Defendants. | |

Plaintiff David Seror, the Chapter 7 Trustee ("Trustee") for Antoine R. Chamoun ("Debtor"),

alleges as follows:

1.    This is an adversary proceeding brought pursuant to Part VII of the Federal Rules of

Bankruptcy Procedure.  It seeks to avoid and recover certain transfers of Debtor's valuable interest

in that certain parcel of real property located at 1706 Empty Saddle, Simi Valley, CA 93063 having

a legal description of: Lot 48 in Tract No. 4176 in the City of Simi Valley, County of Ventura as per

Map recorded in Book 127 Pages 22-31 inclusive of Maps, in the Office of the County recorder of

Ventura County, State of California ("Empty Saddle Property").  The Empty Saddle Property, a community property asset of the Debtor and his former spouse Patricia Chamoun, was transferred to Debtor as part of a Marital Settlement Agreement ("MSA") between Debtor and Patricia Chamoun incorporated into the default/ uncontested dissolution judgment of their marriage filed July 12, 2016 in that certain action entitled <u>Patricia Chamoun v. Antoine Chamoun</u>, Ventura County Superior Court case number D376672 ("Dissolution Action"), a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference as though fully set forth ("Dissolution Judgment").

2.    On June 8, 2018 Debtor caused to be recorded against the Empty Saddle Property a Trust Deed ("Trust Deed") in favor of his brother Walid R. Chamoun, purporting to secure a $200,000 debt to Walid R. Chamoun. A true and correct copy of the Trust Deed is attached hereto and designated as exhibit "B".

3.    In connection with the purported debt owed to Walid R. Chamoun, the Debtor executed two separate notes. The first note, titled "Promissory Note" provides for a maturity date on the loan of May 2025 with interest at the rate of 4 percent per year (the "Promissory Note"). The second note, titled "Note Secured by Deed of Trust" provides for a maturity date on the loan of May 1, 2017 interest indicated as "N/A" (the "Second Note"). Both the Promissory Note and the Second Note (collectively, the "Notes") are dated May 1, 2005. The Notes are not reflected in the MSA. True and correct copies of the Promissory Note are attached hereto and designated as exhibits "C" and "D" respectively.

4.    On August 1, 2016, Debtor as landlord leased the Empty Saddle Property to Patricia Chamoun for a period of ten years with the requirement that Patricia Chamoun pay as rent only the mortgage payment due to the Bank of America ("Lease").  A true and correct copy of the Lease is attached hereto, designated Exhibit "D" and incorporated herein by this reference as though fully set forth.  The MSA, the Trust Deed and Notes and the Lease are collectively referred to herein as "Transfers" and separately as the "MSA Transfer", the "Trust Deed Transfer" and the "Lease Transfer".  The Debtor did not receive adequate consideration for the Transfers.  Plaintiff seeks to avoid the Transfers and obtain entry of a judgment that the title to the Empty Saddle Property is free

of the Trust Deed, Notes and Lease or the value thereof, as hereinafter more fully alleged.

## JURISDICTION AND CASE BACKGROUND

5.   The within bankruptcy case was commenced on or about June 26, 2018 (the "Petition Date"), when a voluntary petition was filed by the Debtor for relief under Chapter 7 of Title 11 of the United States Code (the "Code"), Bankruptcy Case No. 1:18-bk-11620-VK.  The case currently is pending in the San Fernando Valley Division of the United States Bankruptcy Court for the Central District of California.  Plaintiff is the duly appointed and acting Chapter 7 Trustee and brings this adversary proceeding in that capacity.

6.   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

7.   This action is commenced pursuant to Federal Rule of Bankruptcy Procedure 7001.

8.   The within claims are core pursuant to 28 USC § 157(b)(1) and the bankruptcy court, within its conferred power to "hear and determine" such claims, may issue proposed findings of fact and conclusions of law herein. The Trustee consents further to the bankruptcy court entering a final judgment as well.

## THE PARTIES

9.   Plaintiff brings this action solely in his capacity as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

10. Plaintiff is informed and believes, and based thereon alleges that defendant Walid R. Chamoun ("Walid R. Chamoun"), is an individual who at all times herein conducted business and maintained a residence in the Central District of California.  At all times during their lives, Walid R. Chamoun is and has been the brother of the Debtor.

11. Plaintiff is informed and believes, and based thereon alleges that defendant Patricia Chamoun ("Patricia Chamoun"), is an individual who at all times herein conducted business and maintained a residence in the Central District of California.  Prior to the Dissolution Judgment, Patricia Chamoun and the Debtor were at all times material herein spouses of each other.

///

///

**FACTUAL BACKGROUND**

12. On or about July 12, 2016, in the Dissolution Action, the Dissolution Judgment was entered.  In allocating assets between the parties, the parties undertook no valuation efforts.  No professional appraisals were undertaken of the assets transferred.

13. Pursuant to the MSA, the Debtor was assigned a significantly imbalanced share of the community property debts.

14. The Trust Deed and Notes represent no exchange of value.

15. The validity of the Notes themselves is in question given the various inconsistencies contained in the two Notes, which presumably were executed by the Debtor on the same day.

16. Additionally, the circumstances surrounding the recordation of the Trust Deed on June 8, 2018, immediately preceding the filing of the bankruptcy petition by the Debtor on June 26, 2018, to an insider of the Debtor (his brother Walid), supports an inference that the recordation of the Trust Deed was intended to cloud title of the Empty Saddle Property.

17. Separately, assuming the Second Note is valid, the Debtor's obligation to Walid came due in 2017, approximately one year prior to the Debtor's execution of, and recordation of the Trust Deed.

18. The Lease on its face fails to account for fair market rental value of the Empty Saddle Property over the ten year term covered by the Lease and as such imposes an encumbrance on the Empty Saddle Property's value far below fair market value for the interest conferred.

**FIRST CLAIM FOR RELIEF**

**(Avoidance of Transfers Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.04(a)(1) and 3439.07)**

19. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

20. The Transfers were made with the intent to hinder, delay, or defraud creditors of the Debtor.

21. Accordingly, the Transfers are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§544(b) and 550, and Cal. Civil Code §§3439.04(a)(1) and 3439.07.

**SECOND CLAIM FOR RELIEF**

**(Avoidance of Transfers Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code**

**§§3439.04(a)(1) and 3439.07)**

22. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

23. The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

24. At the time the Transfers were made, the Debtor (i) was engaged or was about to be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or reasonably should have believed that it would incur, debts beyond their ability to pay as they came due.

25. Accordingly, the Transfer made by the Debtors are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§544(b) and 550, and Cal. Civil Code §§3439.04(a)(1) and 3439.07.

**THIRD CLAIM FOR RELIEF**

**(Avoidance of Transfer Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code**

**§§3439.04(a)(1) and 3439.07)**

26. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

27. The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

28. The Debtor was insolvent, or became insolvent as a result of the Transfers.

29. There exists a creditor of the Debtor whose claim arose before the Transfers were made.

30. Accordingly, the Transfers are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§544(b) and 550, and Cal. Civil Code §§3439.04(a)(1) and 3439.07.

**FOURTH CLAIM FOR RELIEF**

**(Avoidance of Transfer Pursuant to 11 U.S.C. §§548(a)(1)(A) and 550)**

31. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

32. The Transfers were incurred and made with the intent to hinder, delay, or defraud creditors of the Debtor.

33. Accordingly, the Transfer made by the Debtor should be avoided as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550.

## FIFTH CLAIM FOR RELIEF

**(Avoidance of Transfer Pursuant to 11 U.S.C. §§548(a)(1)(B) and 550)**

34. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

35. The Debtor did not receive reasonably equivalent value in exchange the Transfers.

36. At the time the Transfer was made, the Debtor (i) was insolvent, or became insolvent as a result of the obligations or transfers; (ii) was engaged or was about the be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or reasonably should have believed that it would incur, debts beyond their ability to pay as they came due.

37. Accordingly, the Transfers are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§548(a)(1)(B) and 550.

## SIXTH CLAIM FOR RELIEF

**(Avoidance of Transfer Pursuant to 11 U.S.C. Section 547 and 550)**

31. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

32. The Trust Deed Transfer was a transfer made to or for the benefit of a creditor of the Debtor (Walid R. Chamoun), for or on account of an antecedent debt owed by the Debtor to the creditor and made while the Debtor was insolvent within 90 days of the Petition Date and which enabled the transferee creditor to receive more than the transferee creditor would receive if the case were a case under Chapter 7 of this title, had the Trust Deed Transfer not been made and the creditor received the Trust Deed Transfer to the extent provided by the provisions of this title.

33. Accordingly, the Trust Deed Transfer is avoidable and should be avoided pursuant to 11 U.S.C. Section 547 and 550.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment on its Complaint as follows:

      1.      On the First, Second, Third, Fourth,  Fifth and Sixth Claims for Relief, avoiding and recovering the Transfers referred to therein and declaring them not to encumber the Empty Saddle Property;

      2.      For costs of suit; and

      3.      For such other and further relief as the Court may deem appropriate.

DATED: September 12, 2019          BRUTZKUS GUBNER


                    By: /s/ Richard D. Burstein
                         Richard D. Burstein
                         Attorneys for, David Seror, Chapter 7 Trustee

FL-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Patricia Chamoun, In Pro Per<br><br>1706 Empty Saddle Road<br>Simi Valley, CA 93063<br>TELEPHONE NO.: 818-469-1255      FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: In Pro Per | VENTURA<br>SUPERIOR COURT<br>FILED<br><br>JUL 1 2 2016<br><br>MICHAEL D. PLANET<br>Executive Officer and Clerk<br>By:_____, Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF    VENTURA | |
|---|---|
| STREET ADDRESS: 800 South Victoria Avenue | |
| MAILING ADDRESS: Post Office Box 6489 | |
| CITY AND ZIP CODE: Ventura, CA 93009-0001 | |
| BRANCH NAME: Main Courthouse | |

| MARRIAGE OR PARTNERSHIP OF | |
|---|---|
| PETITIONER: Patricia Chamoun | |
| RESPONDENT: Antoine Chamoun | LETICIA I. |

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| [X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY | | D376672 |

    [ ] Status only
    [ ] Reserving jurisdiction over termination of marital or domestic
        partnership status
    [ ] Judgment on reserved issues
    Date marital or domestic partnership status ends: 12-27-16 *(mjc)*

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
    The restraining orders are contained on page(s)    of the attachment. They expire on *(date)*:

2. This proceeding was heard as follows: [X] Default or uncontested [X] By declaration under Family Code section 2336
    [ ] Contested    [ ] Agreement in court
    a. Date:        Dept.: 82        Room:
    b. Judicial officer *(name)*: MANUEL J. COVARRUBIAS    [ ] Temporary judge
    c. [ ] Petitioner present in court    [ ] Attorney present in court *(name)*:
    d. [ ] Respondent present in court    [ ] Attorney present in court *(name)*:
    e. [ ] Claimant present in court *(name)*:    [ ] Attorney present in court *(name)*:
    f. [ ] Other *(specify name)*:

3. The court acquired jurisdiction of the respondent on *(date)*: June 24, 2016
    a. [X] The respondent was served with process.
    b. [ ] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**
4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
        status of single persons
        (1) [X] on *(specify date)*: 12-27-16 *(mjc)*
        (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
    b. [ ] Judgment of legal separation is entered.
    c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify)*:

    d. [ ] This judgment will be entered nunc pro tunc as of *(date)*:
    e. [ ] Judgment on reserved issues.
    f. The [ ] petitioner's [ ] respondent's former name is restored to *(specify)*:
    g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
    h. [X] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
        *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the
        court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice*
        *of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a*
        *Child Support Order* (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

**JUDGMENT**
(Family Law)

Family Code, §§ 2024, 2340,
2343, 2346
www.courts.ca.gov

EXHIBIT A

Chamoun, Patricia    8

ESSENTIAL FORMS™

FL-180

| CASE NAME (Last name, first name of each party):<br>Chamoun, Patricia and Antoine | CASE NUMBER:<br>D376672 |
| --- | --- |

4. i. **[X]** The children of this marriage or domestic partnership are:

(1) **[X]** Name

Joseph A. Chamoun
Matthew A. Chamoun

Birthdate

August 3, 2008
April 9, 2013

(2) **[ ]** Parentage is established for children of this relationship born prior to the marriage or domestic partnership

j. **[X]** Child custody and visitation (parenting time) are ordered as set forth in the attached

(1) **[X]** Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a).

(2) **[ ]** *Child Custody and Visitation Order Attachment* (form FL-341).

(3) **[ ]** *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

(4) **[ ]** Previously established in another case. Case number:          Court:

k. **[X]** Child support is ordered as set forth in the attached

(1) **[X]** Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).

(2) **[ ]** *Child Support Information and Order Attachment* (form FL-342).

(3) **[ ]** *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

(4) **[ ]** Previously established in another case. Case number:          Court:

l. **[X]** Spousal, domestic partner, or family support is ordered:

(1) **[ ]** Reserved for future determination as relates to **[ ]** petitioner **[ ]** respondent

(2) **[ ]** Jurisdiction terminated to order spousal or partner support to **[ ]** petitioner **[ ]** respondent

(3) **[ ]** As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

(4) **[ ]** As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.

(5) **[ ]** Other *(specify):*

m: **[X]** Property division is ordered as set forth in the attached

(1) **[X]** Settlement agreement, stipulation for judgment, or other written agreement.

(2) **[ ]** *Property Order Attachment to Judgment* (form FL-345).

(3) **[ ]** Other *(specify):*

n: **[X]** Attorney fees and costs are ordered as set forth in the attached

(1) **[X]** Settlement agreement, stipulation for judgment, or other written agreement.

(2) **[ ]** *Attorney Fees and Costs Order* (form FL-346).

(3) **[ ]** Other *(specify):*

o. **[X]** Other *(specify):* The court orders, adjudicates and further decrees the following provisions of the Judgment found in the Marital Settlement Agreement that is attached herewith and incorporated herein by reference and merged into the Judgment thereon.

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:     JUL 0 6 2016

5. Number of pages attached: 25

MANUEL J. COVARRUBIAS

JUDICIAL OFFICER

**[ ]** SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. July 1, 2012]

ESSENTIAL FORMS™

**JUDGMENT**
(Family Law)

Chamoun, Patricia

Page 2 of 2

9

# NOTICE OF RIGHTS AND RESPONSIBILITIES

FL-192

### Health-Care Costs and Reimbursement Procedures

## IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent; or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion. If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

**a. Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

**b. Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs..

Form Approved for Optional Use
Judicial Council of California
FL-192 (Rev. January 2045)
Martin Dean's
ESSENTIAL FORMS™

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
**Health-Care Costs and Reimbursement Procedures**

Family Code, §§ 4062, 4063
www.courts.ca.gov

Page 36 of 159

10

Chamoun, Patricia

# INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER

**FL-192**

### General Information

The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

### When a Child Support Order May Be Modified

The court has several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parties' tax filing status and may consider hardships, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

### Examples

- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.
- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.
- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

### How to Change a Child Support Order

To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

### What forms do I need?

If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:

- FL-680, *Notice of Motion (Governmental)* or FL-683 *Order to Show Cause (Governmental) and*
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is **not** open with the local child support agency, you must fill out one of these forms:

- FL-300, *Request for Order* or
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:

- FL-150, *Income and Expense Declaration* or FL-155, *Financial Statement (Simplified)*

### What if I am not sure which forms to fill out?

Talk to the family law facilitator at your court.

After you fill out the forms, file them with the court clerk and ask for a hearing date. Write the hearing date on the form.

The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:

- Form FW-001, *Request to Waive Court Fees*
- Form FW-003, *Order on Court Fee Waiver (Superior Court)*

You must serve the other parent. If the local child support agency is involved, serve it too.

This means someone 18 or over - **not you** - must serve the other parent copies of your filed court forms at least 16 court days before the hearing. Add **5 calendar days** if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). **Court days** are weekdays when the court is open for business (Monday through Friday except court holidays). **Calendar days** include all days of the month, including weekends and holidays. To find court holidays, go to *www.courts.ca.gov/holidays.htm*.

The server must also serve blank copies of these forms:

- FL-320, *Responsive Declaration to Request for Order and FL-150, Income and Expense Declaration, or*
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

Go to your hearing and ask the judge to change the support. Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:

- FL-340, *Findings and Order After Hearing and*
- FL-342, *Child Support Information and Order Attachment*

### Need help?

Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

---

FL-192 [Rev. January 1, 2015]

*Martin Dean's*
**ESSENTIAL FORMS** 759

NOTICE OF RIGHTS AND RESPONSIBILITIES
Health-Care Costs and Reimbursement Procedures

Page 2 of 2

Chamoun, Patricia   11

## MARITAL SETTLEMENT AGREEMENT

This agreement is made between Antoine Chamoun (hereinafter referred to as "Husband"), and Patricia Chamoun (hereinafter referred to as "Wife"). This agreement shall become effective on the date of its execution.

1. **DATE OF MARRIAGE.** The parties were married on November 5, 2006 and ever since have been and are Husband and Wife.

2. **DATE OF SEPARATION.** The parties' date of separation was May 26, 2016.

3. **CHILDREN:** There are two minor children to this marriage, Joseph A. Chamoun, born August 3, 2008, 7 years old and Matthew A. Chamoun, born April 9, 2013, 3 years old.

4. **IRRECONCILABLE DIFFERENCES.** Irreconcilable differences have led to the irremediable breakdown of the marriage, and there is no possibility of saving the partnership through counseling or other means.

5. **DISSOLUTION PROCEEDINGS.** A petition for dissolution of the marriage of the parties was filed on June 17, 2016 in the Superior Court of California, County of Ventura, Case Number: D 376672, and that action is currently pending.

6. **PURPOSE OF AGREEMENT.** Except as otherwise provided in this agreement, its purpose is to make a final, equal, and complete settlement of all rights and obligations between the parties, including all property rights and obligations, and all rights and obligations concerning children custody and visitation, children support and spousal support.

7. **WAIVER OF FINAL DECLARATIONS OF DISCLOSURE.** Each party hereby waives the requirements of Family Code §2105(a) that the parties serve on each other final declarations of disclosure and income and expense declarations. As required by Family Code §2105(c), the parties hereby declare as follows:

    a. Both parties have complied with Family Code §2104, and the preliminary declarations of disclosure have been completed and exchanged;

    b. The parties have completed and exchanged current income and expense declarations;

IRMO: CHAMOUN: Marital Settlement Agreement

1

c.    Each party has entered into this waiver knowingly, intelligently, and
voluntarily; and

d.    Each party understands that by entering into this waiver he or she may be
affecting his or her ability to have the judgment set aside as provided by
law.

8.  **JOINT LEGAL CUSTODY.** Joint legal custody of the minor children, Joseph A.
Chamoun, born August 3, 2008 and Matthew A. Chamoun, born April 9, 2013, is
awarded to both parties.

In exercising joint legal custody, the parties shall both share in the right
and responsibility to make decisions relating to health, education, and welfare of the
children. The parents shall confer with one another in good faith, and mutual
consent of the parents is required for decisions concerning, but not limited to,
matters such as non-emergency medical treatment, orthodontic care, psychological
counseling or treatment, court actions, obtaining a driver's license, legal contracts,
change of school, quitting school, extracurricular activities that take place during
the other parent's custodial time, and/ or special education. Each parent may
independently plan extracurricular activities that occur only during his/ her
parenting time.

**Emergency health care:** Each party shall be allowed to obtain emergency health
care for the children without the consent of the other party. Each party shall notify
the other party as soon as reasonably possible of any illness or injury requiring
medical attention or any emergency, medical or otherwise, involving the children.
For purposes of this order it shall be presumed that a party has the ability to inform
the other party within one hour of arrival at the medical facility.

**Access to records:** Both parties shall have access to all records pertaining to the
minor children, including, but not limited to, educational, medical, dental, and
psychological records, and be permitted to consult independently with any and all
professionals involved with the children. Each party shall be listed as authorized

IRMO: CHAMOUN: Marital Settlement Agreement

persons to receive any such information directly from the school, daycare, doctor, dentist's office, and hospital. It is not the responsibility of either parent to keep the other informed in these areas, except as otherwise defined herein. It is each party's responsibility to request school calendars, progress reports, report cards, parent-teacher conferences, and IEP meetings, if any directly from appropriate school staff, and to request any medical information, directly from any and all treating physician(s), dentist(s) and/ or practitioner(s). if a children brings home any written notice or communication, the parent who receives it promptly shall provide a copy to the other parent.

**General/ emergency contact information:** Each party shall advise any school(s), children care provider(s), medical practitioner(s), of the name, address, and phone number(s) of the other party in any registration, enrollment, emergency notification cards or other forms in which family information is requested for the minor children.

9. **PHYSICAL CUSTODY.** The parties shall share joint physical custody of the minor children, Joseph A. Chamoun, born August 3, 2008, 7 years old and Matthew A. Chamoun, born April 9, 2013, 3 years old. Both parties shall share in the physical care, custody and control of the children between them in such a manner as to assure that the minor children at all times, maintains frequent and continuing contact with both parents. The parties agree that the visitation schedule shall be flexible whereas the minor children shall live primarily with Mother and all visitation with Father shall be by mutual agreement of the parties.

10. **HOLIDAY SCHEDULE:** The parties shall meet and confer each year and mutually agree as to their respective holiday/vacation schedule with the minor children.

11. **OTHER ORDERS REGARDING THE CHILDREN:**

**Removal from State:** Neither parent shall remove the minor children from the state of California without prior written notification to, and written consent of the other

IRMO: CHAMOUN: Marital Settlement Agreement

parent or a court order, except for prearranged and planned travel or vacations as set

forth herein.

**Communication:** All communication between the parents shall be handled by the

parents themselves, or a third party of mutual agreement, and never through the use

of the minor children. Other than answering age appropriate questions, neither

parent is to discuss any aspect of this case with the children.

**Daily health care:** The custodial parent shall provide the children's basic needs,

which includes proper nutrition, personal items and appropriate accommodations

during his/ her respective time with the children, to ensure their safety and well

being. Both parents shall provide to the other parent any and all medication(s) and

doctor's orders prescribed for the minor children at the start of each custodial

period. At the end of said period, any unused medication(s) shall be returned with

the minor children.

**Change of Residence:** Neither parent may relocate the residence of the minor

children outside the state of California without court order or written consent of the

other parent. Neither parent shall change the children's primary residence more than

fifteen (15) miles from his/ her current residence without first getting written

permission from the other parent or giving other parent at least forty five (45) days

written notice to allow time for mediation or a new agreement concerning custody

and visitation. If the move of residence is less than fifteen (15) miles, written notice

must be given immediately after the move is known to the moving parent, but in any

event no less than five (5) days prior to the move.

**Derogatory Comments:** Neither parent shall make, nor knowingly allow anyone

else to make, any negative, disparaging, or derogatory comments (including, but not

limited to, physical gestures, facial expressions, and/ or verbal statement(s) about

the other parent to, or within the hearing of, the minor children. This shall include,

but not be limited to, family members, friends, and/ or any other third party in the

presence or within the hearing of the minor children.

IRMO: CHAMOUN: Marital Settlement Agreement

4

**Missed regularly scheduled parenting times:** there is no requirement that a parent be given additional parenting time with the children if he/ she misses regularly scheduled parenting times, unless otherwise agreed by the parents.

**Court papers:** Other than answering age appropriate questions, neither parent is to discuss any aspect of this case with the children and neither parent shall knowingly permit any other person (other than a licensed therapist) to discuss any aspect of this case with the children.

**Undated information:** Unless a current protective order would be violated, each parent shall inform the other of his/ her current address and telephone number, place of employment, any school(s) and/ or daycare provider(s) for the minor children, and shall notify the other, in writing, within TWO DAYS of any changes.

**Extracurricular enrichment activities:** The parents acknowledge that the children will be involved in a broad range of extracurricular enrichment activities. Unless a restraining order would be violated, each parent is permitted to attend these activities, whether or not it is during the parent's normally scheduled parenting time with the children. Extracurricular activities that will affect the other parent's custodial time must be mutually agreed upon between the parents, but mutual agreement shall not be withheld unreasonably.

**Schedule Activities:** Neither parent shall schedule any activity, such as attendance at birthday parties, weddings, or holiday celebrations, for the minor children that is to occur during the other parent's scheduled parenting time without the written agreement of the other parent.

**Special activity notification:** each parent shall promptly notify the other of any planned special activity of the children (such as award ceremonies, performances, and or competitions) in order to enable the other parent to attend.

**Telephone/ mail/ email communications/ text messaging:** The non-custodial parent shall have open telephone, mail, email communications and text messaging with the minor children during the minor children's normal waking hours. The

IRMO: CHAMOUN:  Marital Settlement Agreement

5

custodial parent shall distribute to the children all cards, presents and any other sent communications from the non-custodial parent. The minor children shall have open telephone, mail, email communication and text messaging with both parents as desired and neither parent shall interfere with the minor children's right to privacy during these communications. All calls and contacts shall be age appropriate in both length and content. Any questions as to what constitutes "age appropriate" shall be referred to a qualified children development specialist or family counselor of mutual agreement for clarification.

**Withholding visitation or custodial contact:** neither parent shall withhold visitation or custodial contact from the other parent due to differences of opinion regarding support payments and or perceived lack of support payments

12.  **CHILDREN SUPPORT.** The parties agree that children support shall be set to $0.00 and shall be reserved.

The court orders pursuant to Family Code the parties have been fully informed of their rights concerning children support and this judgment is entered into freely without threat or duress and the needs of the minor children will be adequately met by the agreed amount of children support.  The right to support has assigned not been assigned to the county pursuant to §11477 of the Welfare and Institutions Code and no public assistance application is pending.

In the event that there is a contract between a party receiving support and a private children support collector, the party ordered to pay support must pay the fee charged by the private children support collector. This fee must not exceed 33 1/3 percent of the total amount of past due support nor may it exceed 50 percent of any y fee charged by the private children support collector. The money judgment created by this provision is in favor of the private children support collector and the party receiving support, jointly.

13.  **MEDICAL INSURANCE.** Mother shall maintain health and dental insurance coverage for the benefit of the minor children, so long as each child is a full-time

IRMO: CHAMOUN:  Marital Settlement Agreement

student, if that insurance is available at no cost or at reasonable cost to the parent as defined by Family Code section 3751(a)(2). If such coverage is not available, such coverage shall be obtained if it becomes available at no cost or reasonable cost.

Reasonable and necessary health care costs of the minor children not covered by insurance, including medical, pharmaceutical, vision, dental, orthodontic and mental health costs, shall be shared equally by the parents, and each parent shall reimburse the other for his or her share of such expenses paid by the other. Any reimbursement due from one party to the other under this order or otherwise under Family Code section 4063 shall be paid within 30 days of demand.

14. **DEPENDENT EXEMPTIONS:** Each party shall claim one minor child each year as a dependent and exemption for all state and federal income tax purposes. If necessary, the custodial parent shall execute IRS form 8332 to release the exemptions if necessary.

15. **SPOUSAL SUPPORT.** The parties both agree that spousal support and the right to receive spousal support shall be forever terminated. Once spousal support is terminated and the Court approves such termination, the Court shall neither retain jurisdiction (power or right) nor order that either party regardless of the circumstances shall pay spousal support. No spousal support shall be paid by either party to the other and the court shall not retain jurisdiction to award spousal support to either party from the other at any time hereafter regardless of the needs or ability to pay of either party or any other circumstances. The right to receive spousal support or alimony from the other is terminated forever. The parties acknowledge and agree and the Court finds that this loss of jurisdiction, effective immediately, is not ambiguous in any manner and is not subject to interpretation by the Court pursuant to In re Marriage of Vomacka (1984) 36 Cal.3d 459, nor any other legal authority that my now exist or may come into existence in the future. The parties acknowledge and the Court finds that if left to the discretion of the Court the Court may have retained jurisdiction to award either party spousal support for a lengthier

IRMO: CHAMOUN: Marital Settlement Agreement

7

period of time. The parties further acknowledge that their waiver in this regard may cause them to realize hardship in the future due to circumstances that may now seem unlikely and unforeseen and that they nevertheless desire to enter into this waiver acknowledging that they shall never be entitled to request or receive spousal support from the other for any duration other than that specifically set forth hereinabove. The parties further acknowledge that they have devoted considerable thought and consideration to this waiver, that they have not been coerced into same and that their decision in this regard has been made free of duress or undue influence. Accordingly, neither party shall be entitled to request spousal support from the other and/or to obtain an order from any Court providing either of them with spousal support, nor shall any Court now or hereafter have any jurisdiction to either entertain a request from either party for spousal support or order either party to pay spousal support to the other. It is therefore the order of the Court that these terms are absolute, unambiguous and not subject to modifiability in duration and that the Court shall immediately lose any and all jurisdiction to modify the duration of either party's entitlement to spousal support.

16. **PERSONAL PROPERTY.** Each party shall retain as his or her sole and separate property any personal property now in his or her possession and shall hold the other harmless from any liability for such property retained.

17. **COMMUNITY REAL PROPERTY.** There are two community real properties as follows:

    A.   The residence located at 1706 Empty Saddle, Simi Valley, CA 93063 ("Simi Valley Property") The legal description of the residence is as follows:
"Lot 48 of Tract 4176, in the City of Simi Valley, County of Ventura, California as per map recorded in Book 127, Pages(s) 22-31, of the Maps in the Office of the County Recorder of Said County." A.P.N. 657-0-103-345

IRMO: CHAMOUN: Marital Settlement Agreement

B.    The residence located at 11056 Woodward Avenue, Los Angeles, CA 91040. ("Sunland Property") The legal description of the residence is as follows:

> "Lot 3 of Tract No. 3683, in the City of Los Angeles, County of Los Angeles, State of California as per map recorded in Book 53, Page 60 of Maps in the Office of the County Recorder of Said County."

The Simi Valley Property shall be awarded to Husband as his sole and separate property. Wife shall sign a notarized Quit Claim Deed or Interspousal Transfer Deed in favor of Husband as his sole and separate property within 10 days from the date this Marital Settlement Agreement is signed by Husband and Wife and their respective attorneys of record.

The Sunland Property shall be awarded to Wife as her sole and separate property. Husband shall sign a notarized Quit Claim Deed or Interspousal Transfer Deed in favor of Wife as her sole and separate property within 10 days from the date this Marital Settlement Agreement is signed by Husband and Wife and their respective attorneys of record.

18.  **COMMUNITY PROPERTY.**

A) The following community property is awarded to Wife as her sole and separate property and she is ordered to pay any encumbrance thereon and to appear on behalf of, defend and hold Husband harmless therefrom:

1. All household furniture, furnishings and appliances in her possession.
2. Any and all bank accounts in her name.
3. One-half of the funds held in the Citibank Checking Account number ending 7419.
4. One-half of the funds held in the Citibank Checking Account number ending 7511.
5. One-half of the funds held in the Citibank Insured Money Market Account number ending 7427.
6. 100% of the Swag Vault 401(k).

IRMO: CHAMOUN: Marital Settlement Agreement

9

B) The following community property is awarded to Husband as his sole and separate property and he is ordered to pay any encumbrance thereon and to appear on behalf of, defend and hold Wife harmless therefrom:

1. All household furniture, furnishings, and appliances in his possession.

2. Any and all bank accounts in his name.

3. One-half of the funds held in the Citibank Checking Account number ending 7419.

4. One-half of the funds held in the Citibank Checking Account number ending 7511.

5. One-half of the funds held in the Citibank Insured Money Market Account number ending 7427.

6. 100% of the business known as *T & J Flooring Designs, Inc* and all business debts associated thereon.

19. **SEPARATE PROPERTY.**

A) The following separate property is assigned to Wife and she is ordered to pay any encumbrance thereon and to appear on behalf of, defend and hold Husband harmless therefrom:

1.    100% of the McGraw Hill Financial Savings and Profit Sharing Plan with an approximate balance of $59,776.24.

B) The following separate property is assigned to Husband and he is ordered to pay any encumbrance thereon and to appear on behalf of, defend and hold Wife harmless therefrom:

1.    100% of the Citibank Investment Account with a balance of $32,817.05.

20.    **COMMUNITY PROPERTY OBLIGATIONS:**

A) The following community property debt is assigned to Wife and she is ordered to pay any encumbrance thereon and to appear on behalf of, defend and hold Husband harmless therefrom:

1.    100% of the Chase credit card account number ending 8588 with an approximate balance of $9,338.02 as of April 28, 2016;

IRMO: CHAMOUN:  Marital Settlement Agreement

2.      100% of the Toyota auto loan, account number 01 0472 EA529; and

3.      100% of the Citi ThankYou Preferred Card, account number ending 4816
with an approximate balance of $5,304.16 as of May 13, 2016.

B) The following community property debt is assigned to Husband and he is
ordered to pay any encumbrance thereon and to appear on behalf of, defend and
hold Wife harmless therefrom:

1.      Citi Platinum Select, account number ending 9171 with an approximate
balance of $1,792.89 as of April 20, 2016;

2.      Citi ThankYou Preferred Card, account number ending 5822 with an
approximate balance of $4.18 as of April 15, 2016;

3.      Citi ThankYou Preferred Card, account number ending 7026 with an
approximate balance of $12,853.32 as of May 17, 2016;

4.      Bank of America Visa,  account number ending 3556 with an approximate
balance of $8,115.58 as of May 20, 2016;

5.      Discover, account number ending 7668 with an approximate balance of
$9,479.92 as of May 13, 2016;

6.      AMEX, account number ending 7-81004 with an approximate balance of
$5,029.27 as of May 2, 2016;

7.      GM Card, account number ending 5899 with an approximate balance of
$5,633.50 as of May 8, 2016;

8.  .   Nordstrom, account number ending 9304 with an approximate balance of
$3,042.48 as of March 29, 2016;

9.      Chase, account number ending 0539 with an approximate balance of
$1,522.37 as of May 16, 2016;

10.     Chase, account number ending 8664 with an approximate balance of
$9,587.59 as of May 12, 2016;

11.     Citibank, account number ending 2380 with an approximate balance of
$40,817.78 as of April 7, 2016.

IRMO: CHAMOUN:  Marital Settlement Agreement

21. **ATTORNEY FEES.** Each party pays his/ her own attorney fees and costs.

22. **ASSUMPTION OF OBLIGATIONS.** Petitioner hereby assumes and agrees to pay any and all debts and obligations incurred by him after the date of separation, which is not otherwise provided for in this agreement. Respondent hereby assumes and agrees to pay any and all debts and obligations incurred by her after the date of separation, which is not otherwise provided for in this agreement.

23. We each agree to appear on behalf of and indemnify and hold the other harmless from and against any and all obligations which each of us is assuming under this agreement, and from all costs and expenses, including but not limited to, attorney's fees in connection therewith.

24. Neither of us shall hereafter incur any indebtedness chargeable against the other, or his or her estate, from and after the date hereof, nor contract any debt or obligation in the name of the other, and each of us agrees to indemnify and hold harmless the other from and against any such indebtedness incurred or created by such indemnifying party. Each of us warrants to the other that he or she has not incurred any unpaid liability or obligation on which the other may be liable (except as expressly provided for in this agreement), and each of us agrees to indemnify and hold harmless the other from and against such liability or obligation. We agree to forthwith surrender and cancel all credit cards and charge accounts presently outstanding upon which the other would, is or may become liable.

25. **WARRANTY OF FULL DISCLOSURE OF EXISTENCE OF ASSETS.** We agree that we are possessed of the community property assets and obligations set forth and divided below. Each of us hereby warrants to the other that neither of us is now possessed of any property of any kind or description, other than specifically listed herein. If it later appears that either of us now owns any other property the other has an interest in, or that one of us has made without the consent of the other any gift or transfer of community property other than that set

IRMO: CHAMOUN: Marital Settlement Agreement

forth below, the warrantor agrees to pay the other, at the other's election, either the fair market value of the warrantee's interest on the date of this agreement (including appreciation of interest and value of the asset when ascertained), or on the date the warrantor's ownership is discovered by warrantee, or on the day the gift was made, whichever is higher, together with reasonable attorney fees and court costs, if it is determined that such property was intentionally concealed or withheld from the other. This agreement shall not impair the availability of any other remedy. The Court shall have continuing jurisdiction to award community assets or liabilities to the parties that have not been previously adjudicated by this judgment. These assets or liabilities shall be known as omitted assets or liabilities pursuant to Family Code §2556.

26. FUTURE ACQUISITIONS. Any property, earnings and accumulations acquired by either of us after the date of our separation shall be the separate property of the one acquiring it, and each of us waives all property rights in such acquisitions as the separate property of the one acquiring the same from said date.

(a) The party receiving specific property hereunder shall pay, from and after the effective date hereof, all taxes assessed against such property, all encumbrances and insurance and all costs of maintenance thereof, except as otherwise provided herein.

(b) The party receiving specific property hereunder shall also take the obligation or encumbrance on said property and pay, from and after the effective date hereof all payments falling due, and said party hereby agrees to indemnify and hold harmless the other from such obligation or encumbrance, except as otherwise provided herein.

27. **REIMBURSEMENTS, CREDITS, CHARGES AND OFFSETS.** The Court finds that each party has waived any and all rights to reimbursements, credits, charges or offsets from the other party or the community that are not mentioned in the agreement, including, but not limited to, the following:

IRMO: CHAMOUN: Marital Settlement Agreement

13

(a) <u>Epstein</u> credits (<u>Marriage of Epstein</u> (1979) 25 Cal 3d 76) and all rights of reimbursement to which a party may be entitled as a result of the payment of community obligations since the date of separation.

(b) <u>Watts</u> credits (<u>Marriage of Watts</u> (1985) 171 Cal App 3d 366) and all rights of reimbursement to which a party may be entitled as a result of one party's use of community assets since the date of separation.

(c) All rights to reimbursement pursuant to <u>Family Code</u>, Section 2640 or otherwise, for separate property contributions to the acquisition or improvement of community property.

(d) All rights to reimbursement pursuant to <u>Family Code</u>, Section 2641 or otherwise, for contributions made by the community or either party to the education or training of one or both of the parties.

(e) All rights to reimbursement for gifts of community property made to third parties.

(f) All rights to reimbursement or credit of any kind or character whatsoever that either party may have or claim to have against the other party or the community.

28.    **OBLIGATIONS OF PETITIONER.**    Petitioner shall retain all credit cards that are in her name alone and shall take Respondent's name off of all of his credit cards and indemnify her from and against all liability associated with such credit cards.

29.    **OBLIGATIONS OF RESPONDENT.**    Respondent shall retain all credit cards that are in her name alone and shall take Petitioner's name off of all her credit cards and indemnify him from and against all liability associated with such credit cards.

30.    **TAXES.** If at any time after the effective date of this agreement the parties shall be entitled to any tax refund on any federal or state income tax returns filed by the parties jointly, such refund shall be divided between them upon receipt in the

IRMO: CHAMOUN:  Marital Settlement Agreement

same proportion taxes on said returns were paid. Any deficiency assessed for any prior year in which the parties filed joint returns shall be payable in proportion to each party's individual obligation, taking into account each party's business and the adverse tax consequences the businesses generated.

(a) Each party agrees to hold the other harmless against any federal or state income tax liability imposed by reason of any income, re-computation of income, or disallowance of any deduction claimed by either which has not been disclosed to the other for any year prior to the effective date of this agreement.

31. **WAIVER OF RIGHT TO RETIREMENT BENEFITS PENSION.** Each of the parties agree and waive his and her respective right in and to the other's pension or profit sharing plan and understands that having waived said right, said right can never again be asserted in the future and is forever waived, except with respect if any of the assets of each party as to any pension or profit sharing plan has not been disclosed, then such assets shall be treated as an omitted asset subject to equitable distribution in a post judgment order to show cause hearing.

32. **EXECUTION OF INSTRUMENTS.** The judgment shall provide that each party shall, upon request of the other or counsel of the other party, execute, acknowledge and deliver any and all deeds, bills of sale, assignments, instruments and documents necessary or desirable to transfer title and to carry out the terms and provisions of the marital settlement agreement and the judgment of dissolution. Should a party that is required to execute and deliver such documents fail to do so within fifteen (15) days after demand has been made therefore, by the party entitled hereto, then, and in that event, the other party may make application to the court, accompanied by proper ex parte notice of such application to the other party, in order to carry out such orders as may be necessary to obtain the execution of said documents and to obtain delivery of same to the party entitled thereto. The court shall specifically retain jurisdiction to make such other and

IRMO: CHAMOUN:  Marital Settlement Agreement

15

26

further orders as may be necessary, convenient or required with respect to the
form of any documents which are or may be necessary to effectuate the purposes
of the marital settlement agreement and judgment of dissolution, and any such
aggrieved party may make application to the court for such purposes accompanied
by an ex parte application.

33.  **EQUAL DIVISION.** The parties agree that this marital settlement agreement
effects an equal division of the property.  To the extent that the division of
community property herein is not equal, the parties specifically waive their right
to an equal division.  To the extent that either party may be entitled to an appraisal
of assets divided herein, said right to an appraisal is waived.  Net proceeds of any
community property items sold by the parties shall be divided equally between the
parties.

34.  **NOTIFICATION REGARDING DEBT ASSIGNMENT.** The parties hereby
acknowledge and agree that they are aware of and understand that a community
property debt or obligation may be assigned to one party as part of the division of
property and debts, but if that party does not pay the debt or obligation, a third
party creditor may be able to collect from the other party.

35.  **EQUALIZATION OF DIVISION OF COMMUNITY PROPERTY ASSETS
AND OBLIGATIONS.** By the provisions hereof, we intend to affect an equal
partition of community property assets and obligations.  Each of us therefore
agrees that the tax basis of each asset allocated to him under those provisions has
not changed and will not change by reason of this division; and each agrees not to
seek a new tax basis for any asset grounded on any such change.  If either party
seeks a new basis for any such asset and the other party is later assessed for
additional federal or state income taxes on the ground that any disposition of
assets under those provisions was a taxable event, the party seeking the new basis
shall indemnify the other party in the amount of tax liability arising from the
assessment.  Insofar as the provisions of this paragraph are inconsistent with the

IRMO: CHAMOUN: Marital Settlement Agreement

16

rights or obligations of either party under any other provision for indemnification

in this marital settlement agreement, the provisions of this paragraph shall prevail.

36.    **RELEASE OF CLAIM TO OTHER PARTY'S ESTATE.** Each party waives

and releases any and all right to inherit any part of the estate of the other at his or

her death, to receive property from the estate of the other, except under a will or

codicil dated subsequent to the effective date of this marital settlement agreement,

to act as the personal representative of the estate of the other on intestacy, to act as

the personal representative under the will of the other unless so nominated by a

will or codicil dated subsequent or the effective date of this marital settlement

agreement, or to claim a family allowance or probate homestead in the other

party's estate.

37.    **FULL DISCLOSURE.** Each party warrants that he or she has made a full

disclosure of all the real and personal property belonging to each of them and of

all debts and obligations incurred by each of them pursuant to Family Code

Section 2104 of the preliminary declaration of disclosure and Family Code.  Such

disclosures are part of the consideration of each party for entering into this marital

settlement agreement.

    A.    Each party warrants that this marital settlement agreement has been

prepared based upon joint negotiation of both of the parties and should be

interpreted fairly, and simply not for or against either of the parties.

    B.    Each party warrants and the parties acknowledge and desire an early and

amicable and expeditious settlement of all matters set forth in this marital

settlement agreement; and the parties choose not to exercise all of the

discovery rights available to them, including but not limited to, the right to

depose each other, to propound interrogatories and request for admissions,

to subpoena records, to obtain expert appraisals of any asset, and

determine income or value a business to obtain actuaries to evaluate any

insurance and/or retirement funds, if any, and the right to have the court

IRMO: CHAMOUN:  Marital Settlement Agreement

17

determine division of the assets, awards, support, and all other issues, if
any.

38.   **AGREEMENT VOLUNTARY AND CLEARLY UNDERSTOOD.** Petitioner
and Respondent acknowledge that each of them enters into this marital settlement
agreement voluntarily, has been fully informed as to the rights and liabilities of
each party, is fully and completely informed as to the facts relating to the subject
matter of this marital settlement agreement, has carefully read each provision of
this marital settlement agreement, and fully understands each of the provisions of
this marital settlement agreement.

39.   Each party hereto acknowledges that he or she is making this marital settlement
agreement of his or her own free will and volition, and acknowledges that no
coercion, duress, force, pressure, undue influence whatsoever has been employed
against himself or herself in negotiations leading to, or the execution of, this
marital settlement agreement, either by the other party hereto or by any other
person or persons whatsoever, and declares that no reliance whatsoever is placed
upon any representations other than those expressly set forth herein.

40.   **EMBODIMENT OF ENTIRE AGREEMENT.** This marital settlement
agreement contains the entire agreement of the parties on the matters it covers,
and it supersedes any previous agreement between us.  No other agreement,
statement or promise made by, or to either of us or the agent or representative of
either of us shall be binding on us unless it is in writing and signed by both of us,
or unless contained in an order of a court of competent jurisdiction.

41.   **FAMILY CODE SECTION 2024 NOTICE RE DISSOLUTION OF
MARRIAGE.** Both parties hereby acknowledge and agree that they are aware of
and understand Family Code Section 2024, which states in pertinent part:
". . . (b) A judgment for dissolution, for nullity of marriage, or for legal
separation of the parties shall contain the following notice: 'Please review your
will, insurance policies, retirement benefit plans, credit cards, other credit

IRMO: CHAMOUN:  Marital Settlement Agreement

accounts and credit reports, and other matters you may want to change in view of the dissolution or annulment of your marriage, or your legal separation. Dissolution or annulment of your marriage may automatically change a disposition made by your will to your former spouse'."

42. **ATTORNEY FEES IN EVENT OF FUTURE LITIGATION.** If either party shall bring an action or other proceeding to enforce any order or decree made by any court in connection with this marital settlement agreement, including the enforcement of the marital settlement agreement itself, the prevailing party shall be entitled to costs and reasonable attorney fees from the other party.

43. **SOCIAL SECURITY RIGHTS.** The parties shall retain their respective social security rights as their respective separate property. Under present law, either party may have a derivative right to direct payment from the social security system from employment by Petitioner and Respondent during the marriage, and such federal payments made directly to either party shall be his or her respective property.

44. **RESERVATION OF JURISDICTION.** The parties agree that the court shall have jurisdiction to make whatever orders may be necessary or desirable to carry out this marital settlement agreement and to divide equally between the parties any community property assets or liabilities omitted from division under this marital settlement agreement.

45. **FAMILY CODE SECTION 3048.** The court has jurisdiction over Petitioner as she filed a petition with the court on June 17, 2016. The court has jurisdiction over Respondent on June 24, 2016 as he was personally served and thus subjected himself to the jurisdiction of the court. Additionally, as the parties consider California the minor children's home state as they has resided in California 6 months prior to the filing of this petition for dissolution. The court orders that pursuant to Family Code Section 3048 the court has jurisdiction over the parties in the above mentioned dissolution action and they have subjected themselves to the

IRMO: CHAMOUN: Marital Settlement Agreement

19

jurisdiction of this court to hear this matter. Additionally, as the parties consider California the minor children's home state, the court has jurisdiction over the minor children under the UCCJEA. Moreover, the custody and visitation provisions of this stipulation and order are set forth more specifically in the body of this order. The court orders that there can be severe consequences, both civil and criminal, if these orders as to custody and visitation are violated. The court orders that the habitual residence of the minor children is the United States of America.

46.     **ADVICE OF COUNSEL.** The parties recognize that the termination of the marriage and division of marital property shall be determined by this instrument. The parties' agreed to mediate this case knowingly and with due regard for the importance of same have elected to proceed with this marital settlement agreement. Each has read the Marital Settlement Agreement carefully and agrees with all of its terms regarding division of the community assets. Each party has signed this agreement without any undue influence and has not been coerced or forced into any of its terms whatsoever. The Court finds and the parties agree and acknowledge that neither the mediator is a tax expert and has not made any representations or given any recommendations, advise, opinion or statements to either party regarding the tax consequences or tax effect of any of the matters set forth in this Marital Settlement Agreement. The Court find that each party is advised to seek the assistance of an accountant, tax attorney, or other tax specialist to provide advice as to the tax consequences of this Marital Settlement Agreement, or any ramifications thereof. The Court further finds that each party has represented and warranted that he and she had a reasonable opportunity to consult with a tax specialist regarding the tax consequences of this Marital Settlement Agreement. The parties acknowledge that they have sought and obtained all of the tax, business related or other advice they deem necessary in order to enter into this Marital Settlement Agreement or if he and/ or she has not

IRMO: CHAMOUN: Marital Settlement Agreement

done so, it has been at his and/ or her own election. Lindsey B. Green, Esq. acted
as the mediator and prepared the Marital Settlement Agreement. The parties
recognize that the termination of the marriage and division of community property
will be determined by this instrument.  We recognize that each has legal counsel
of their own choosing and that we knowingly and with due regard for the
importance of same have elected to proceed with this marital settlement
agreement, even after each party consulted with their respective independent
counsel.

47.    **PRESENTATION TO COURT.** This marital settlement agreement shall be
presented to the court for incorporation and merger into the judgment in any
dissolution proceeding between the parties.

48.    **BINDING EFFECT.** This marital settlement agreement, and each provision
thereof, is expressly made binding upon the heirs, assigns, executors,
administrators, representatives, and successors in interest of each party.

49.    **RECONCILIATION.** In the event of reconciliation between us, this marital
settlement agreement, nevertheless, shall continue in full force and effect until
modified, altered or terminated by an agreement in writing to such effect, signed
by each of us.

50.    **MISCELLANEOUS PROVISIONS.** If any portion of this marital settlement
agreement shall be held illegal, unenforceable, void or voidable by any court, each
of the remaining terms hereof shall nevertheless remain in full force and effect as
a separate contract.

(a) This marital settlement agreement shall be subject to and shall be interpreted
     under the laws of the State of California.

(b) This Agreement may be executed in two or more counterparts, each of which
     shall be an original, but all of which shall constitute on and be the same
     instrument.  The Agreement may be executed by facsimile or electronic
     signature instead and in lieu of an original signature.

IRMO: CHAMOUN: Marital Settlement Agreement

(c) Each party waives their right to appeal, reconsideration, or to move for a new trial.

(d) Assumption of indebtedness by each party shall be considered a separate duty directly related to the support and maintenance of the other, though payments of said debts shall not be considered deductible as alimony or maintenance for income tax deductibility for the payee.

Said assumption of said indebtedness likewise shall not be considered dischargeable in any bankruptcy proceedings by either party as against the other to allow a third party creditor to claim against the non-bankrupt former spouse (party to this marital settlement agreement).

51.    **JUDGE PRO TEM OR COMMISSIONER.** The hearing for the judgment of dissolution of our marriage may be before a commissioner or judge pro tempore, whether or not an appearance has been made.

52.    **EFFECTIVE DATE.** The effective date of this agreement will be the date of its execution by the both parties.

53.    **COURT ACTION.** If a judgment of dissolution of marriage is obtained by either party, the original of this agreement will be attached to this Marital Settlement Agreement.  The Court will be requested to the following:

(a) Approve the entire agreement as fair and equitable;

(b) Order the parties to comply with all of its executory provisions:

(c) Merge the provisions relating to spousal support, future acts with respect to property division, and income tax returns, and only those provisions, into the judgment; and

(d) Incorporate the remainder of the agreement in the judgment for the sole purpose of identification.

///
///
///
///
///
///

IRMO: CHAMOUN:  Marital Settlement Agreement

22

54.    **OTHER ORDERS.**

a.    This Judgment is effective and enforceable under C.C.P. §664.6.

b.    This is a complete and final agreement of all issues.

c.    The parties shall execute any documents necessary to carry out the terms of this agreement.

d.    This agreement shall be incorporated into a final Judgment of Dissolution of Marriage.


EACH PARTY HAS CAREFULLY READ THIS AGREEMENT IN ITS ENTIRETY, AND HIS OR HER ATTORNEY HAS FULLY EXPLAINED ITS CONTENTS AND LEGAL EFFECT.

**APPROVED AS TO FORM AND CONTENT:**

Date: 6/24/16

_____
Patricia Chamoun,
Petitioner

Date: 6/24/16

_____
Antoine Chamoun,
Respondent

IRMO: CHAMOUN: Marital Settlement Agreement

# NOTICE OF BELIEF OF ABANDONMENT
### Residential or Nonresidential Property

**NOTE:** If the Tenant does not respond to this notice and the notice expires, the property, real and personal, has been abandoned and the tenancy terminated. The Landlord may then dispose of itemized unclaimed property. [Calif. Civil Code §§1951.3, 1991]

**DATE:** _____ July 7 _, 20 16 _, at _____ Calabasas _____, California.

**To Tenant:** _____ Antoine Chamoun, T & J Flooring & Design, Inc. _____

*Items left blank or unchecked are not applicable.*

**FACTS:**

1. You are a Tenant under the rental or lease agreement
   - 1.1 dated _____ September 3 _, 20 09 _, at _____ Canoga Park _____, California,
   - 1.2 entered into by _____ ANTOINE CHAMOUN, T & J FLOORING & DESIGN, INC. _____, as the Tenant, and
   - 1.3 _____ ETON INVESTMENT GROUP _____, as the Landlord,
   - 1.4 regarding real estate referred to as _____ 8900 Eton Avenue, Suite "D", Canoga Park, California _____

**YOU ARE HEREBY INFORMED:**

Rent on the leased property has been due and unpaid for 14 consecutive days or more, **AND** Landlord believes you have abandoned the property. Personal property remains on the premises as described in Section 6.

**NOTICE:**

2. This notice expires unless you respond by _____ July 26 _, 20 16 _, which date is at least:
   - ☐ 15 days after this notice was personally served on you; or
   - ☑ 18 days after this notice was sent by first class mail, postage prepaid, to your last known address.

3. On expiration of this notice, the property will be considered abandoned, your right to possession terminated, and all remaining personal property will be disposed of under Section 8 below.
   - 3.1 Landlord reserves the right to collect future rent losses allowed by California Civil Code §1951.2.

4. **YOU MAY AVOID THIS NOTICE,** if before it expires and at the address below, Landlord receives your written notice stating:
   - 4.1 Your intent not to abandon the real estate, **AND**
   - 4.2 An address where you may be served by certified mail in any action for unlawful detainer of the real property.

5. **YOU MAY AVOID DISPOSAL OF PERSONAL PROPERTY** by doing the following before expiration of this notice:
   - 5.1 Pay the reasonable cost of storage for all the personal property, **AND**
   - 5.2 Take possession of the personal property.

6. The personal property remaining is described as _____ tile and flooring samples and display units, desks and other personal property _____

7. The personal property may be claimed at _____ 8900 Eton Avenue, Suite "D", with prior arrangement _____

8. **The personal property to be claimed or disposed of is valued as:**
   - 8.1 ☐ Worth more than $300. If you fail to reclaim the property, it will be sold at a public sale after published notice of the sale. You have the right to bid on the property at this sale. After the property is sold and the cost of storage, advertising and sale are deducted, the remaining money will be handed to the county. You may claim the remaining money within one year after the county receives the money.
   - 8.2 ☑ Worth less than $300. This property is believed to be worth less than $300. Therefore, it may be kept, sold or destroyed without further notice if you fail to reclaim it prior to expiration of this notice. [Calif. CC §1988]

9. You are required by agreement to pay past due rent. Failure to pay can lead to court proceedings against you.

| | |
|---|---|
| Date: | July 7 , 20 16 |
| Landlord/Agent: | ETON INVESTMENT GROUP |
| Signature: | |
| Address: | 5101 Douglas Fir Road |
| | Calabasas, CA  91302 |
| Phone: | 818-591-9011   Fax: 818-591-0345 |

**FORM 581**      04-08      ©2008 **first tuesday**, P.O. BOX 20069, RIVERSIDE, CA 92516  (800) 794-0494

**RECORDING REQUESTED BY:**

Antoine R Chamoun

**WHEN RECORDED MAIL TO:**

Name : Walid R Chamoun
Address : 1706 Empty Saddle Rd
City: Simi Valley
State & Zip Code: California 93063

20180608-00066149-0 1/8
Ventura County Clerk and Recorder
MARK A. LUNN
06/08/2018 03:55:06 PM
1347597 $219.00 LE

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST – WITH REQUEST FOR NOTICE

THIS DEED OF TRUST is made this First day of May 2005 among the Trustor, Antoine R Chamoun (herein "Borrower"), Walid R Chamoun (herein "Trustee"), and the beneficiary, Walid R Chamoun, a corporation organized and existing under the laws of N/A whose address is N/A (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Ventura, State of California:

Tract 4176, Lot 48, Page Grid 499-C3
APN 657-0-103-345

WHICH HAS THE PROPERTY ADDRESS OF:

STREET: 1706 Empty Saddle Rd
CITY: Simi Valley
STATE: California
ZIP: 93063 (herein "Property Address"):

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now and hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

TO SECURE to Lender (a) the repayment of the indebtedness evidenced by Borrower's note dated May 1, 2005 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $200,000.00 Dollars, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on May 1, 2017; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of records.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit developed assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments of hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless annual accounting of

Borrower's Initials: AC
Deed of Trust - With Request for Notice

36

the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs I and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards including within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Borrower's Initials:
Deed of Trust - With Request for Notice

37

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender, at Lender's option, may require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a)**

Borrower's Initials: _____
Deed of Trust - With Request for Notice

38

**to all reasonable costs and expenses of the sale, including but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all cost of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the County where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor Trustee. The successor Trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Borrower's Initials: _____
Deed of Trust - With Request for Notice

39

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGE OR DEED OF TRUST

Borrower and Lender request the holder of any mortgage, Deed of Trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrances and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code of California, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the Deed of Trust (or mortgage) recorded 5/20/2005 in Book N/A , Page Grid 499-C3, records of Ventura County, (or filed for record with recorder's serial number #123138), Ventura County, California.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

Dated: 6/5/2018

STATE OF CALIFORNIA                    }
COUNTY OF                              }ss
                                       }

On  June 5TH, 2018              before me  Sandeep Singh Dhanjal
                                , Notary Public,

personally appeared  Antoine  Chamoun

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

NOTARY'S NAME (typed or legibly printed)
SANDEEP SINGH DHANJAL

X    ANTOINE CHAMOUN
            AKA
     ANTOINE R CHAMOUN

SPACE BELOW RESERVED FOR NOTARY SEAL

SANDEEP SINGH DHANJAL
Notary Public - California
Ventura County
Commission # 2176256
My Comm. Expires Dec 19, 2020

REQUEST FOR RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: 6/5/2018

Borrower's Initials
Deed of Trust – with Request for Notice

40

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

**STATE OF CALIFORNIA**
**COUNTY OF VENTURA** _____

On _____6/8/18_____ before me, **Z. Husain (Notary Public)**
       DATE                                         NAME, TITLE OF OFFICER

Personally appeared _____ANTOINE R. CHAMOUN_____

who proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

> Z. HUSAIN
> COMM. # 2089160
> NOTARY PUBLIC-CALIFORNIA
> VENTURA COUNTY
> My Commission Expires DECEMBER 5, 2018

WITNESS my hand and official seal,

_____ _Notary Public_
**SIGNATURE OF NOTARY**

## OPTIONAL

**CAPACITY CLAIMED BY SIGNER**

INDIVIDUAL

CORPORATE OFFICER

PARTNER(S)

ATTORNEY IN FACT

TRUSTEE(S)

GUARDIAN/CONSERVATOR

OTHER:

**DESCRIPTION OF ATTACHED DOCUMENTS**

_Deed of Trust_
TITLE OF DOCUMENT

4
PAGES

6/5/2018
DATE

---------------------------------------**REQUEST FOR NOTICE OF DEFAULT**---------------------------------------

**AND FORECLOSURE UNDER SUPERIOR**

**MORTGAGE OR DEED OF TRUST**

Borrower and Lender request the holder of any mortgage, Deed of Trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrances and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code of California, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the Deed of Trust (or mortgage) recorded 5/20/2005 in Book        , Page        , records of Ventura County, (or filed for record with recorder's serial number #123138, Ventura County) California, executed by Antoine R Chamoun as Trustor (or Mortgagor) in which Walid R Chamoun is named as Beneficiary (or Mortgagee) and Walid R Chamoun as Trustee be mailed to Antoine R Chamoun at 16935 Blackhawk St #9, Granada Hills CA 91344

Notice: A copy of any Notice of Default and any Notice of Sale will be sent to the address contained in this recorded Request. If your address changes, a new Request must be recorded.

Dated this 8th day of June, 2018.

By: ANTOINE R CHAMOUN

Name:

Title:

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

**STATE OF CALIFORNIA**
**COUNTY OF VENTURA** _____

On __6/8/18__ before me, **Z. Husain (Notary Public)**
DATE                                    NAME, TITLE OF OFFICER

Personally appeared _____ ANTOINE R. CHAMOUN _____

who proved to me on the basis of satisfactory evidence

to be the person(s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

_____ *Notary Public*
**SIGNATURE OF NOTARY**

```
Z. HUSAIN
COMM. # 2089160
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
My Commission Expires DECEMBER 5, 2018
```

## OPTIONAL

**CAPACITY CLAIMED BY SIGNER**

- (INDIVIDUAL)
- CORPORATE OFFICER
- PARTNER(S)
- ATTORNEY IN FACT
- TRUSTEE(S)
- GUARDIAN/CONSERVATOR
- OTHER:

**DESCRIPTION OF ATTACHED DOCUMENTS**

_Report of Notice of Default_
TITLE OF DOCUMENT

_____
PAGES

_6/8/2018_
DATE

## Promissory Note

For value received, I, the undersigned, promise to pay to the order of <u>Walid Chamoun</u> the principal sum of <u>$200,000.00</u> on May 2025 (maturity date) with interest at the rate of 4 percent per year, interest payable when full payment amount is due on maturity date of May 2025 at which time all unpaid sums of principal and interest shall be due and payable.

Should default be made in payment of the principal or interest, the whole sum of principal and interest shall, at the option of holder of this note, become immediately due.

This Note is subject to Section 2966 of the <u>California Civil Code,</u> which provides that the holder of this Note shall give written notice to the trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due.

Antoine R Chamoun

May 1, 2005

EXHIBIT C

**DO NOT DESTROY THIS ORIGINAL NOTE: When paid, this Note and the Deed of Trust must be surrendered to Trustee with a request for reconveyance.**

## NOTE SECURED BY DEED OF TRUST
### (INTEREST EXTRA)

$ _200,000.00_    _SIMI VALLEY_, California _MAY FIRST, 2005_

In installments and at the times hereinafter stated, for value received, I/We promise to pay to _WALID RIZK CHAMOUN_ or order at _1706 EMPTY SADDLE RD, SIMI VALLEY CA 93063_ the principal sum of _TWO HUNDRED THOUSAND_ DOLLARS, with interest from _N/A_, _N/A_ on the amounts of principal remaining from time to time unpaid, until said principal sum is paid, at the rate of _N/A_ per cent per annum, payable _N/A_. Said principal sum is due in _ONE_ installments of _TWO HUNDRED THOUSAND_ DOLLARS ($ _200,000.00_ ) or more on the _N/A_ day of each and every month beginning on _N/A_. _N/A_. DUE ON MAY FIRST, 2017 (TWO THOUSAND SEVENTEEN)

INITIAL: ✗    MAY FIRST, 2005

and continuing until said principal sum has been fully paid. AT ANY TIME, THE PRIVILEGE IS RESERVED TO PAY MORE THAN THE SUM DUE.

Should interest not be so paid, it shall be added to the principal and thereafter bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rater permitted by law. If default is made in the payment of any installment of principal or interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note. Principal and interest are payable in lawful money of the United States. If an action is instituted on this note I/We promise to pay such sum as the Court may fix as attorney's fees. This note is secured by a DEED of TRUST to _WALID RIZK CHAMOUN_, as Trustee.

_ANTOINE RIZK CHAMOUN_

_[signature]_    5/1/2005

INTEREST ACCRUAL DATE IS HEREBY ADJUSTED TO ACCRUE FROM _N/A_. _N/A_

_N/A_
Escrow Holder

45

EXHIBIT D

CALIFORNIA
ASSOCIATION
OF REALTORS

**RESIDENTIAL LEASE OR
MONTH-TO-MONTH RENTAL AGREEMENT**
(C.A.R. Form LR, Revised 11/08)

Date **8-1-2016**

**Antoine R. Chamoun** ("Landlord") and
**Patricia Chamoun** ("Tenant") agree as follows.

1. **PROPERTY:**
   A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as:
   **1706 EMPTY SADDLE RD  SIMI VALLEY  CA 93063** ("Premises").
   B. The Premises are for the sole use as a personal residence by the following named person(s) only:
   **PATRICIA, JOSEPH, and matthew Chamoun**
   C. The following personal property, maintained pursuant to paragraph 11, is included:

   _____ or ☐ (if checked) the personal property on the attached addendum.

2. **TERM:** The term begins on (date) **AUGUST 1, 2016** ("Commencement Date"), (Check A or B):
   ☐ A. **Month-to-Month:** and continues as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be given on any date.
   ☑ B. **Lease:** and shall terminate on (date) **AUGUST 31, 2026** at **12:00** ☐ AM ☑ PM.
   Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in paragraph 2A. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit
   A. Tenant agrees to pay $ **Mortgage .** per month for the term of the Agreement. ( **Bank of America Mortgage Amount** )
   B. Rent is payable in advance on the 1st (or ☑ **16 th** ) day of each calendar month, and is delinquent on the next day.
   C. If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated based on a 30-day period.
   D. **PAYMENT:** Rent shall be paid by ☑ personal check, ☐ money order, ☐ cashier's check, or ☐ other _____, to
   (name) **Bank of America, N.A.** (phone) **800-669-6607** at
   (address) **P.O. BOX 650070  DALLAS, TX 75265-0070** (or
   at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally between the hours
   of **N/A** and **N/A** on the following days **N/A** ). If any payments
   is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☐ cashier's check.

4. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay $ **N/A** as a security deposit. Security deposit will be ☐ transferred to and held by the Owner of the Premises, or ☐ held in Owner's Broker's trust account.
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy, and (iv) replace or return personal property or appurtenances. SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2) return any remaining portion of the security deposit to Tenant.
   C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
   D. No interest will be paid on security deposit unless required by local law.
   E. If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposit is released to someone other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been provided such notice, Tenant agrees not to hold Broker responsible for the security deposit. **N/A**

5. **MOVE-IN COSTS RECEIVED/DUE:** Move-in funds made payable to _____
   shall be paid by ☐ personal check, ☐ money order, or ☐ cashier's check.

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from | N/A | | | |
| to _____ (date) | | | | |
| *Security Deposit | N/A | | | |
| Other | N/A | | | |
| Other | N/A | | | |
| Total | | | | |

*The maximum amount Landlord may receive as security deposit, however designated, cannot exceed two months' Rent for unfurnished premises, or three months' Rent for furnished premises.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2008, CALIFORNIA ASSOCIATION OF REALTORS©, INC. ALL RIGHTS RESERVED.
LR REVISED 11/08 (PAGE 1 OF 6)

Tenant's Initials ( _____ )( _____ )
Landlord's Initials ( AC )( _____ )

Reviewed by _____ Date _____

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 6)**

Agent:
Broker:

Prepared using zipForm® software

Exhibit.7

EXHIBIT E                                                                 46

Premises: _1706 EMPTY SADDLE RD Simi Valley CA 93063_   Date: _8/1/2016_

6. **LATE CHARGE; RETURNED CHECKS:**

A. Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or ☑ _1_ ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $ _8 N A Late Fee_ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

B. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 3 or prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

7. **PARKING: (Check A or B)**
   ☐ A. Parking is permitted as follows: _____

   The right to parking ☑ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking properly licensed and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work or storage of inoperable vehicles is not permitted in parking space(s) or elsewhere on the Premises.

   OR ☐ B. Parking is not permitted on the Premises.

8. **STORAGE: (Check A or B)**      N/A
   ☐ A. Storage is permitted as follows:
   The right to storage space ☐ is, ☐ is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $ _____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.

   OR ☐ B. Storage is not permitted on the Premises.

9. **UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: _____ except _No Exceptions_ , which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

10. **CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke detector(s).
    (Check all that apply:)
    ☑ A. Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____
       _NO Exceptions_
    ☐ B. Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).
    ☐ C. Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or ☐ _____ ) days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgment of the condition of the Premises.
    ☐ D. Other: _____

11. **MAINTENANCE:**

A. Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all smoke detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

B. ☐ Landlord ☑ Tenant shall water the garden, landscaping, trees and shrubs, except: _____

C. ☐ Landlord ☑ Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____

D. ☐ Landlord ☑ Tenant shall maintain _LAND and Appliances_

E. Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

F. The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: _Appliances_

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
LR REVISED 11/08 (PAGE 2 OF 6)

Tenant's Initials ( _JHE_ )( _____ )
Landlord's Initials ( _JHE_ )( _____ )
Reviewed by _____ Date _____

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 6)**

Premises: *1706 Empty Saddle Rd  Simi Valley CA 93063* Date: *8/1/2016*

12. **NEIGHBORHOOD CONDITIONS:** Tenant is advised to satisfy him or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

13. **PETS:** Unless otherwise provided in California Civil Code § 54.2, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, except: _____

14. ☐ **(If checked) NO SMOKING:** No smoking is allowed on the Premises. If smoking does occur on the Premises, (i) Tenant is responsible for all damage caused by the smoking including, but not limited to, stains, burns, odors and removal of debris; (ii) Tenant is in breach of this Agreement; (iii) Tenant, Authorized Guests, and all others may be required to leave the Premises; and (iv) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint entire Premises regardless of when these items were last cleaned or replaced. Such actions and other necessary steps will impact the return of any security deposit.

15. **RULES/REGULATIONS:**
   A. Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.
   B. **(If applicable, check one)**
      ☐ 1. Landlord shall provide Tenant with a copy of the rules and regulations within _____ days or _____
      OR ☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

16. ☐ **(If checked) CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**
   A. The Premises is a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____.
      Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions. Landlord shall provide Tenant copies of rules and regulations, if any. Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant.
   B. **(Check one)**
      ☐ 1. Landlord shall provide Tenant with a copy of the HOA rules and regulations within _____ days or _____
      OR ☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the HOA rules and regulations.

17. **ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 29C, without Landlord's prior written consent, (i) Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; (ii) Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; (iii) Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Tenant shall be considered unpaid Rent.

18. **KEYS; LOCKS:**
   A. Tenant acknowledges receipt of (or Tenant will receive ☐, prior to the Commencement Date, or ☐ _____ ):
      ☑ _2_ key(s) to Premises,          ☑ _/_ remote control device(s) for garage door/gate opener(s).
      ☑ _1_ key(s) to mailbox,           _____
      ☐ _____ key(s) to common area(s).  _____
   B. Tenant acknowledges that locks to the Premises ☐ have, ☐ have not, been re-keyed.
   C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

19. **ENTRY:**
   A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs, decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors.
   B. Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows: 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice. Notice may be given orally to show the Premises to actual or prospective purchasers provided Tenant has been notified in writing within 120 days preceding the oral notice that the Premises are for sale and that oral notice may be given to show the Premises. No notice is required: (i) to enter in case of an emergency; (ii) if the Tenant is present and consents at the time of entry or (iii) if the Tenant has abandoned or surrendered the Premises. No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement.
   C. ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

20. **SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

21. **ASSIGNMENT; SUBLETTING:** Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord,

Tenant's Initials ( *JL* )( _____ )
Landlord's Initials ( *GIC* )( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
LR REVISED 11/08 (PAGE 3 OF 6)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 6)**

Premises: _1706 Empty Saddle Rd  Simi Valley CA 93063_etc.  _8/1/2016_

terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement.

22. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

23. ☐ **LEAD-BASED PAINT (if checked):** Premises was constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

24. ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises is located within one mile of an area once used for military training, and may contain potentially explosive munitions.

25. ☐ **PERIODIC PEST CONTROL:** Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

26. ☐ **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

27. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

28. **POSSESSION:**
   A. Tenant is not in possession of the premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____ ) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid. Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord
   B. ☐ Tenant is already in possession of the Premises.

29. **TENANT'S OBLIGATIONS UPON VACATING PREMISES:**
   A. Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii)

   B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

   C. **Right to Pre-Move-Out Inspection and Repairs:** (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the end of a lease, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 29C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3) or (4).

30. **BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 29, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

31. **TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

32. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

33. **INSURANCE:** Tenant's or guest's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is

Tenant's Initials ( _JC_ )( _____ )
Landlord's Initials ( _AC_ )( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
LR REVISED 11/08 (PAGE 4 OF 6)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 4 OF 6)**

Premises: _1706 Empty Saddle Rd Simi Valley CA 93063_ Date: _8/1/2016_

advised to carry Tenant's own Insurance (renter's insurance) to protect Tenant from any such loss or damage. Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

34. **WATERBEDS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises.

35. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

36. **NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:
Landlord: _16785 Blackhawk St. Unit 9_ Tenant: _____
_Granada Hills CA 91344_

37. **TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

38. **TENANT REPRESENTATIONS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Landlord may cancel this Agreement: (i) before occupancy begins; (ii) upon disapproval of the credit report(s); or (iii) at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.

39. **MEDIATION:**
   A. Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.
   B. The following matters are excluded from mediation: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.
   C. Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

40. **ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, except as provided in paragraph 39A.

41. **C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

42. **OTHER TERMS AND CONDITIONS; SUPPLEMENTS:** ☐ Interpreter/Translator Agreement (C.A.R. Form ITA);
☐ Keysafe/Lockbox Addendum (C.A.R.Form KLA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD)

The following ATTACHED supplements are incorporated in this Agreement: _____
_____
_____N/A_____

43. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing

44. **AGENCY:**
   A. **CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
   Listing Agent: (Print firm name) _____N/A_____
   is the agent of (check one): ☐ the Landlord exclusively; or ☐ both the Landlord and Tenant.
   Leasing Agent: (Print firm name) _____N/A_____
   (if not same as Listing Agent) is the agent of (check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.
   B. **DISCLOSURE:** ☐ (If checked): The term of this lease exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt

45. ☐ **TENANT COMPENSATION TO BROKER:** Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

Tenant's Initials ( _TC_ )( _____ )
Landlord's Initials ( _AC_ )( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
LR REVISED 11/08 (PAGE 5 OF 6)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 6)**

Premises: _1706 EMPTY SADDLE RD SIMI VALLEY CA 93063_ Date: _8/1/2016_

46. ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____. Landlord and Tenant acknowledge receipt of the attached interpretor/translator agreement (C.A.R. Form ITA)

47. **FOREIGN LANGUAGE NEGOTIATION:** If this Agreement has been negotiated by Landlord and Tenant primarily in Spanish, Chinese, Tagalog, Korean or Vietnamese, pursuant to the California Civil Code Tenant shall be provided a translation of this Agreement in the language used for the negotiation.

48. **OWNER COMPENSATION TO BROKER:** Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LCA).

49. **RECEIPT:** If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

Landlord and Tenant acknowledge and agree Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

Tenant agrees to rent the Premises on the above terms and conditions.

Tenant _____ _N/A_ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Tenant _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ **GUARANTEE:** In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____
Guarantor _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Landlord agrees to rent the Premises on the above terms and conditions.
Landlord _____ Landlord _____

Address _____
Telephone _____ Fax _____ E-mail _____

**REAL ESTATE BROKERS:**
A. Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
B. Agency relationships are confirmed in paragraph 44.
C. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Real Estate Broker (Listing Firm) _____ _N/A_ _____ DRE Lic. # _____
By (Agent) _____ _N/A_ _____ DRE Lic # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Leasing Firm) _____ _N/A_ _____ DRE Lic. # _____
By (Agent) _____ _N/A_ _____ DRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

LR REVISED 11/08 (PAGE 6 OF 6)
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 6)**



**This page is part of your document - DO NOT DISCARD**

# 20100871102



**Pages:**
**0003**



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/25/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**LEADSHEET**

201006250240004

00002565911

002749787

**SEQ:**
**05**

TRUStees
MITCH A. GENSER
CHAMMUA

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t93

